UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DANIEL BRUNO,

                              Plaintiff,                            07 Civ. 7503 (VM)

       -against-

METROPOLITAN TRANSPORTATION AUTHORITY,

                              Defendant.

-------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(6)**

PRELIMINARY STATEMENT

In this action brought under the aegis to the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq. (hereinafter the "FELA"), the plaintiff's complaint (Exhibit 1) has phrased two causes of action. The first cause of action arises out to the "new", "additional", aggravation and/or exacerbation of injuries previously sustained by DANIEL BRUNO, when as a result of the negligence of his workplace superiors when following his request of October 28, 2004 he was wrongfully denied "no work" status while he was convalescing at home following a work related accident of September 22, 2003 wherein he sustained a traumatic brain injury when struck in the head by a falling metal pipe. The second cause of action arises out of the slow developing toxic exposure personal injuries sustained by DANIEL BRUNO as a result of being assigned by his workplace superiors to work at or near the vicinity of the "ground zero" region of Manhattan, in the immediate aftermath of the September 11, 2001 terror attacks upon the World Trade Center. Without any understanding whatsoever regarding the nature of these cause of action or the underlying reason for these two causes of action being interposed at this time, the

defendant has moved to dismiss plaintiff's complaint pursuant to FRCP Rule 12(b)(6).[1]  For the

reasons which follow, defendant's motion should be denied in all respects.

<u>STANDARD OF REVIEW</u>

As noted by the Court of Appeals in <u>DeMuria v. Hawkes</u>, 328 F.3d 704, 706 (2nd Cir.

2003), the standard of review to be applied on a Rule 12(b)(6) motion requires that the Court be

> accepting as true the complaint's factual allegations and drawing
> all inferences in the plaintiff's favor. <u>Scutti Enters. v. Park Place
> Entm't Corp.</u>, 322 F.3d 211, 214 (2d Cir.2003). "The court may not
> dismiss a complaint unless it appears beyond doubt, even when the
> complaint is liberally construed, that the plaintiff can prove no set
> of facts which would entitle him to relief." <u>Jaghory v. New York
> State Dep't of Educ.</u>, 131 F.3d 326, 329 (2d Cir.1997) (internal
> quotation omitted). Because the complaint must allege facts which
> confer a cognizable right of action, " '[t]he issue is not whether a
> plaintiff will ultimately prevail but whether the claimant is entitled
> to offer evidence to support the claims.' " <u>York v. Ass'n of the Bar
> of the City of New York</u>, 286 F.3d 122, 125 (2d Cir.2002) (citing
> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d
> 90 (1974))(alteration in original)

---

[1] Defendant also improperly attempts to move for an order granting them the alternate relief of summary judgment pursuant to FRCP Rule 56(c), notwithstanding that by so deliberately moving the Court for such relief, they have knowingly failed to comply with all rules applicable to such a motion, inclusive of the Local Civil Rule 56.1 Statement of Material Facts Upon Which There Can Be No Dispute.  The failure to provide a Rule 56.1 statement is grounds for the denial of a motion for summary judgment.  Local Civil Rule 56.1(a).  Moreover, defendant has failed to come forward with any factual evidence, no less in admissible form by persons with actual knowledge, regarding any one issue of fact, as would be required in support of a motion for summary judgment. While a Court may in some limited circumstances treat a Rule 12(b)(6) motion as a motion for summary judgment, the defendant itself cannot deliberately plan to have its Rule 12(b)(6) motion treated as a motion for summary judgment. To permit them to do so would also permit defendant to knowingly circumvent the Court's local rules and procedures regarding the making of summary judgment motions, thereby rendering impotent all those local rules and procedures which govern the making of a motion for summary judgment, including Local Civil Rule 56.1. Additionally, as previously noted defendant has adduced no facts or evidence proving their entitlement to the drastic relief of  summary judgment as a matter of law.  Considering that in an FELA action plaintiff need only prove that the slightest degree of the railroad's negligence played even the slightest part in bringing about the plaintiff's injury, <u>Rogers v. Missouri Pacific R. Co.</u>, 352 US 500, (1950), the granting of the most drastic remedy of summary judgment is indeed a rarity in FELA actions.  Because of the relaxed and liberal standards of construction afforded to FELA actions, in order to prevail upon a motion for summary judgment in an FELA action, the defendant <u>must</u> overcome the most onerous burden of proof known, which in this instance they have not.  Since defendant has not made the requisite evidentiary showing that would entitle them to the drastic remedy of summary judgment, plaintiff does not see the need to respond to this motion for judgment on the pleadings with countervailing admissible factual evidence in proof of triable issues of material fact.  However, to the extent the Court in the unlikely exercise of its discretion, treats this motion as one for summary judgment, then to the extent admissible evidence is required to raise issue of material fact, plaintiff respectfully requests that the Court permit plaintiff the opportunity to come forward with the tender of such admissible evidence as is then required to address any dispositively relevant issue of material fact.

<u>FACTS</u>

Because the factual allegations set forth in plaintiff's complaint must be accepted as true and further they must be liberally construed it is respectfully submitted that plaintiff has indeed properly plead two appropriate causes of action for personal injury under the FELA.


<u>As Regards the First Cause of Action</u>:

The MTA is a railroad engaged in interstate commerce by rail who on October 28, 2004 employed the plaintiff, DANIEL BRUNO, as a police office under its direction and control and in furtherance of its business in interstate commerce.  (Complaint paragraphs 1, 2, 3, & 4).  On September 22, 2003, the plaintiff, DANIEL BRUNO, sustained a traumatic brain injury, when while in the course of his employment as a police officer with the MTA he was struck in the head by a falling metal pipe.  (Complaint Paragraph 5; See also settlement papers tendered by movant.)   Because the metal pipe that injured DANIEL BRUNO had been precariously placed in the location from where it fell by another MTA police officer, suit was commenced in the Southern District and assigned docket number 04 Civ. 3383 (THK) (See, Complaint from September 22, 2003 FELA action tendered by movant).  The action settled on the second full day of trial and the plaintiff executed certain documents releasing all claims for injuries that occurred specifically on September 22, 2003.  (See, settlement papers as tendered by movant).

While he was out of work on account of the work related injuries he sustained on September 22, 2003, so that he may continue to receive his line of duty injury/sick pay & medical benefits, pursuant to defendant's work rules then in effect and in particular Interim Order 99-06 which governed "Absence/Sick Leave", DANIEL BRUNO was confined to his home, subject to random telephone call and/or in person verification by the MTA.  (Complaint paragraph 7; See also Interim Order 99-06 annexed to movant's papers.)  The failure to comply

with the home confinement policy set forth by Interim Order 99-06 would result in the denial of sick leave pay and/or may subject the employee to disciplinary proceedings which would result in the termination of employment. (Interim Order 99-06, Section 6(b), annexed to movant's papers.) An exception to the home confinement and random verification process was available and was called "no work" status. (See Interim Order 99-06, Section 5(g), annexed to movant's papers.) On October 28, 2004 the plaintiff, DANIEL BRUNO, first petitioned his employer for "no work" status, the granting of which would relieve DANIEL BRUNO of his home confinement and the aforementioned random verification process. (Complaint paragraph 8; See also Interim Order 99-06 annexed to movant's papers.) Pursuant to the settlement papers, DANIEL BRUNO's employment with the MTA continued through August 29, 2007. (See settlement papers annexed to moving papers.) Nonetheless, from October 28, 2004 when he first made the request through his last day of employment on August 29, 2007, all the while he was an employee of the defendant, the MTA inexplicably and arbitrarily refused to grant DANIEL BRUNO "no work" status. (Complaint paragraph 9).

Because DANIEL BRUNO acted as he was required to by his continuing employment responsibility to "remain available for sick investigation" (Interim Order 99-06, Section 5(a)) all the while he was at home he remained in the performance of his duties as a police officer employed by the MTA as he was required to do so by Interim Order 99-06 under sanction of loss of injury/sick pay and/or disciplinary sanction/termination. (Complaint paragraph 10 & Interim Order 99-06). As a result of the defendant's refusal to grant DANIEL BRUNO "no work" status he was caused to sustain severe and disabling injuries due to the defendant's negligence in failing to grant him "no work" status. (Complaint paragraphs 10 & 11). As such, all the while DANIEL BRUNO was at home, on the defendant's payroll and subject to the defendant's work rules which required that he be "available for sick investigation", and all that time while he was

obediently following the procedures set forth by Interim Order 99-06,  DANIEL BRUNO was acting in furtherance of his employment with the railroad, the directives of his workplace superiors and therefore was acting in furtherance of the railroad's business in interstate commerce by rail, or work closely and substantially affecting the same.  (Complaint paragraph 12).

Additional Facts Relevant to the First Cause of Action Not Required to Be Plead:

On April 12, 2002, some eighteen months prior to the date of DANIEL BRUNO's injury of September 22, 2003, in the case of Capasso v. MTA, 198 F.Supp 452 (SDNY  2002) the Hon. William C. Connor, ruled that Interim Order 99-06 was facially unconstitutional in that it did not provide guidelines for its implementation by indicating how the supervisor was to make determinations as to whether or not to grant permission to the injured police officer to leave the sick location.  Therefore defendant knew as a matter of law that Interim Order 99-06, was facially unconstitutional.  Nonetheless, defendant readily admits at paragraph 4 of the Barraga Affirmation attached to its moving papers herein that all the while DANIEL BRUNO was in their employ, DANIEL BRUNO was made subject to Interim Order 99-06, notwithstanding that it  was known by the MTA to be an unlawful regulation.  Plaintiff's complaint alleges defendant's failure to grant him "no work" status which is an integral component of the facially unconstitutional Interim Order 99-06.  Plaintiff's complaint further alleges that defendant's enforcement of Interim Order 99-06 and their failure to grant him "no work" status caused him to suffer injury.[2]  (Complaint paragraph 10 & 11).  Plaintiff's complaint further alleges at

---

[2] Were the Court to require proof in admissible form regarding the specific nature of the injuries claimed herein, plaintiff would adduce the affidavit of his treating neurologist, Kishore Ranade, MD, who in conversation with plaintiff's counsel has stated to a reasonable degree of medical certainty that because he was wrongfully denied "no work" status and thereby kept under "house arrest" by his employer DANIEL BRUNO was not able to pursue an appropriate course of cognitive therapy which thereby caused the aggravation, exacerbation and/or permanence of DANIEL BRUNO's pre-existing cognitive impairments. Dr. Ranade would further aver to a reasonable degree of medical certainty that because DANIEL BRUNO had previously responded favorably to timely cognitive therapy for cognitive impairments resulting from a prior traumatic brain injury, that DANIEL BRUNO would again have responded favorably and that therefore the extent and/or permanence of his cognitive impairments would have been mitigated if not completely eliminated by the timely institution of an appropriate course of cognitive therapy.

paragraph 11, that defendant failed to promulgate and enforce proper and safe rules a) for the activities carried out by their personnel and b) for the safe conduct of the work operations of the railroad.  Therefore plaintiff has properly plead a cause of action under the FELA for defendant's negligence.

As Regards the Second Cause of Action:

The MTA is a railroad engaged in interstate commerce by rail who on and prior to September 13, 2001 employed the plaintiff, DANIEL BRUNO, as a police office under its direction and control and in furtherance of its business in interstate commerce.  (Complaint paragraphs 14 & 15.)  On or about September 13, 2001, and subsequent to the September 11, 2001 destruction of the World Trade Center, New York, NY, the MTA assigned DANIEL BRUNO to work at or near the vicinity of the World Trade Center, New York, NY.  (Complaint paragraph 16) .  While DANIEL BRUNO was in the performance of his duties as a police officer at the World Trade Center he was caused to sustain severe and disabling injures by reason of the negligence of the MTA. (Complaint paragraph 17).  The negligence of the MTA consisted of, inter alia, failing to provide plaintiff with a safe place to work, failing to promulgate safety rules and procedures for MTA police officers working at that location, failing to warn of the existence of the dangers involved in such work and failing to provide the necessary and proper tools and equipment with which to work. (Complaint paragraph 18).  Because he was assigned to work at this location by his employer, the MTA, the injuries DANIEL BRUNO sustained while working at the World Trade Center site in the immediate aftermath of its destruction, were sustained while DANIEL BRUNO was working in furtherance of his employer's business in interstate commerce, or in work closely or substantially affecting the same.  (Complaint paragraph 19).

Additional Facts Relevant to the Second Cause of Action Not Required to Be Plead:

      DANIEL BRUNO's application for a line of duty accidental disability pension arising

out of his September 22, 2003 accident and injury was denied by the MTA on July 26, 2007

based upon the July 25, 2007 recommendation of the MTA's medical board which consisted of

Merritt Hait, MD ( physician employed by CHD Meridian Healthcare, an MTA contractor) and

Joseph Bottner, MD (a physician employed by the MTA).  (Exhibit 2).  By virtue of the doctrine

of judicial estoppel, the defendant cannot deny that after noting that certain of DANIEL

BRUNO's complaints pre-existed September 22, 2003 by "almost 2 years" the first and therefore

primary reason offered in denial of DANIEL BRUNO's disability pension by the MTA's

medical board is their reference to the prior cause of DANIEL BRUNO's disability (his

hyponatremia, Cushings disease, cortisol resistance and/or SIADH) as all arising out of  911

exposure.  This is the first time any doctor ever advised DANIEL BRUNO that these ailments

which disable him arose out of "911" exposure.  Previously, he had been under the impression as

testified to by his treating neurologist, Kishore Ranade, MD, at his trial before Judge Katz that

these injuries were neurological in nature and had been caused by the head trauma associated

with the falling pipe incident of September 22, 2003.

      The second cause of action of plaintiff's complaint, which relates his injuries to his work

at the September 2001 World Trade Center situs and which at paragraph 18 alleges the

defendant's negligence in failing to provide plaintiff with a safe place to work, failing to

promulgate safety rules and procedures for MTA police officers working at that location, failing

to warn of the existence of the dangers involved in such work, failing to provide the necessary

and proper tools and equipment with which to work, therefore states a valid cause of action

under the FELA.

<u>ARGUMENT</u>

POINT I.      THE FELA ITSELF DEFINES THE NON-DELEGABLE DUTY OF THE
              RAILROAD TO PROVIDE ITS EMPLOYEES WITH A SAFE WORKPLACE
              AND WITH SAFE EQUIPMENT AND TOOLS WITH WHICH TO WORK.

     A)      THE FELA

Section 51 of Title 45 provides:

> "Every common carrier by railroad while engaging in
> commerce between any of the several states...shall be liable
> in damages to any person suffering injury while he is
> employed by such carrier in such commerce...for such
> injury... resulting <u>in whole or in part</u> from the negligence of
> any of the officers, agents, or employees of such carrier, or
> by reason of any defect or insufficiency due to its
> negligence in its cars, engines, machinery, track, roadbed,
> works, boats, wharves or other equipment."  (emphasis
> supplied.)

Section 51 establishes the liability for railroads for injuries to employees and resulting

damages.

     The criteria of such liability are different from the ordinary negligence standard, being

designed to afford maximum protection to railroad employees, the danger of whose employment

is legendary.  The FELA places high standards of care upon railroads to furnish safe and proper

working conditions and safe equipment with which to work.

     The United States Supreme Court has stated that ". . . this statute is an avowed departure

from the rules of common law..." <u>Sinkler v. Missouri Pac. R.R. Co.</u>, 365 US 326, 329 (1958).

Thus the Court held that a railroad employee may recover for injuries sustained in the course of

his employ if the negligence of his employer played any part, no matter how small, in producing

those injuries.  <u>Rogers v. Missouri Pac. R.R. Co.</u>, 77 S.Ct. 443 <u>rehearing denied</u> 77 S.Ct. 888,

353 U.S. 943, 1 L.Ed.2d 764, 352 U.S. 500 (1957).

     The classic concept of proximate cause is inapplicable and in its place is the requirement

merely that there be some causal relation (no matter how slight) between the injury and the railroad's negligent act or omission. <u>Gallick v. Baltimore & Ohio R.R. Co.</u>, 83 S.Ct. 658, 372 U.S. 108, 9 L.Ed 2d 618.

The duty of care imposed on the railroad employer under the FELA is substantially greater than the duty of care imposed by the common law.


B)    <u>DUTY OF RAILROAD TO ITS EMPLOYEES</u>

The plaintiff, an employee of the railroad, was at all relevant times herein employed as a police officer to maintain law and order on the MTA's various properties, and therefore was covered by the FELA. <u>Greene v. LIRR & MTA</u>, 280 F.3d 224 (2nd Cir. 2002) *cert. denied* 538 U.S. 1031, 123 S.Ct. 2073, 155 L.Ed.2d 1060 (2003).

The defendant railroad's duty to provide to plaintiff a safe place in which to work and safe equipment with which to do that work under the FELA is one which it could not delegate. 45, U.S.C.A. Section 51. <u>Shenker v. Baltimore O.R. Co.</u>, 83 S.Ct. 1667, 374 US 1, 10 L.Ed 2d 709.

The railroad was under a duty to supply machinery and appliances which were reasonably safe and suitable for use by its employees for the work to be done <u>Chicago, etc. R. Co. v. Bower</u>, 36 S.Ct. 624, 241 U.S. 470 60 L.Ed 1107 see also <u>Rodrigues v. Delray Connecting R.R.</u>, 473 F.2d 819. The railroad's duty to provide a safe workplace applies not only to the physical location of the work site, but additionally to the negligent acts of the plaintiff's fellow employees. <u>Rediker v. Chicago, Rock Island and Pac. R. Co</u>, 571 P2d 70, *cert. denied* 435 US 982, 98 Sct 1635, 56 LEd2d 76 (1977); <u>Chesapeake & Ohio Ry. Co v. Richardson</u>, 116 F.2d 860, *cert. denied* 313 US 574, 61 Sct 961, 85 LED 1531 (1941). Moreover, the railroad has a duty under the FELA to inspect and maintain all of its property. <u>Almendarez v. Atchison, T. & S.F.</u>

Ry. Co., 426 F.2d 1095 (C.A. Tex 1970) as well as that of third-parties upon which their

employees may be called upon to work.  Shenker v. Baltimore & O. R. Co., 374 US 1, 83 S.Ct.

1667, 10 LEd2d 709 (1963).

Plaintiff, as all railroad employees, had a right to assume that the railroad had taken

reasonable precautions to eliminate potential hazards at the work site.  Cazad v. Chesapeake &

O. Ry. Co.,622 F.2d. 72 C.A. Wa.Va. 1980).

As regards the first cause of action, DANIEL BRUNO was injured by reason of the

negligent acts of his fellow railroad employees who wrongfully denied him "no work" status and

thereby kept him under house arrest when the enforced Interim Order 99-06, which they knew,

or should have known in the exercise of due care, had been held facially unconstitutional.

Furthermore, within the context of the second cause of action the plaintiff was injured by reason

of the defendant failing to provide him with safe and proper equipment with which to work and

in failing to provide plaintiff with a safe place in which to work. Furthermore, the MTA violated

its non-delegable lawful obligation to inspect and maintain the work site where they sent their

employee, DANIEL BRUNO, even though they did not own the property situated at that work

location.  Therefore DANIEL BRUNO was negligently assigned to work at 'ground zero" by his

employer, sustaining injury thereby, and therefore the MTA is liable to him under the FELA.

The defendant MTA failed to provide the plaintiff with a safe place to work and/or safe

equipment with which to work in that amongst other things:

With Respect to the First Cause of Action:

    (a)    They knowingly and arbitrarily enforced the facially unconstitutional Interim
Order 99-06 against DANIEL BRUNO, thereby causing him new injury or
otherwise aggravating and/or exacerbating his pre-existing injuries;

    (b)    They knowingly and arbitrarily refused to grant DANIEL BRUNO "no work"
status, thereby causing him new injury or otherwise aggravating and/or
exacerbating his pre-existing injuries;

With regard to the Second Cause of Action:

(c)     They never inspected the "ground zero" work site before sending plaintiff there to work;

(d)     They never tested the air quality at the "ground zero" work site before sending plaintiff to work there; and

(e)     They never provided plaintiff with any kind of proper or safe breathing device or other such appropriate and/or necessary safety equipment before assigning DANIEL BRUNO to work at "ground zero";


D)     STANDARD OF CARE UNDER FELA

The standard of care imposed on a railroad under the FELA is substantially higher than the standard of care under ordinary negligence common law.  Thus, the railroad is liable to its employees for injuries resulting from slight negligence.  What this means is that the railroad has the obligation to exercise not just ordinary care, but great care.  Shipman v. Boeing, 411 F.2d 365 (5th Cir. 1969).

The railroad's standard of care must be commensurate to the dangers of the business. Wilkerson v. McCarthy, 336 69 S.Ct. 413 U.S. 53, 3 L.Ed 497; Tiller v. Atlantic Coast Line R. Co., 63 S.Ct. 444 318 U.S. 54, 87 L.Ed 610 and the duty of the employer becomes more imperative as the risks increase.  Blair v. Baltimore & Ohio R. Co., 65 S.Ct. 546, 323 U.S. 600, 89 L.Ed 490.

Here the MTA in this case did not comply with even a minimum degree of care.  As regards the first cause of action, no precautions whatsoever were taken to assure that Interim Order 99-06 would be negated or replaced with an appropriately new Interim Order once it was declared unconstitutional by Judge Connor.  Instead, the railroad wrongfully held DANIEL BRUNO to the requirements of this facially unconstitutional Interim Order under sanction of loss of his injury pay and/or termination of his employment.  Moreover, as regards the second

cause of action, no precautions whatsoever were taken to assure that DANIEL BRUNO would be safe from exposure to toxins when assigned to work at "ground zero" in the immediate aftermath of the 911 terror attacks.

Clearly in both of these instance this violates the MTA's non-delegable duty to provide its employee, DANIEL BRUNO, with a safe workplace.

If the railroad did not comply with its obligation to provide plaintiff with a safe place and safe equipment with which to work and this failure played any part, no matter how slight, in producing plaintiff's injury, then defendant railroad is liable to plaintiff for his injuries. Webb v. Illinois Cent. R. Co., 22 S.Ct. 451, 352 U.S. 512, 1 Ed 2d 503 rehearing denied 77 S.Ct. 809, 353 U.S. 943, 1 L.Ed 2d 764. Rogers v. Missouri Pac. R. Co., 77 S.Ct. 443, 352 U.S. 500, 1 L.Ed 2d 493 rehearing denied 77 S.Ct. 888, 353 U.S. 943, 1 L.Ed 2d 764.

E)    CAUSATION UNDER THE FELA

A plaintiff seeking recovery under FELA must establish negligence on the part of the railroad and a casual connection to the injury. Atchinson T. & S.F. Ry. Co. v. Saxon, 52 S.Ct. 229, 284 U.S. 458, 76 L.Ed 397. It is not necessary that the railroad's negligence be the entire cause of the accident; if the railroad's negligence contributes in whole or in part it is liable. Ely v. Reading Co., 424, F.2d 758 (C.A. Pa. 1970).

The FELA expressly refers to liability for injuries or death "resulting in whole or in part from its breach of duty. This is the test both where the claim of negligence is under FELA or a violation under the Safety Appliance Act or Boiler Inspection Act." Coray v. Southern Pac. Co., 69 S.Ct. 275, 335 U.S. 520, 93 L.Ed 208.

The legal cause of an accident for the purposes of FELA liability does not have to be a substantial cause as well as an actual factor in bringing about the injury or death. Coray v.

Southern Pac. Co., supra.  The proper test is whether the proofs justify with reason the conclusion that the employer's negligence played any part <u>even the slightest</u> in producing the injury or death for which damages are sought.  Rogers v. Missouri Pac. R. Co., supra; see also Gallick v. Baltimore & Ohio R.R. Co., supra.

In <u>Rogers v. Missouri Pacific Railroad Co.</u>, supra, the United States Supreme Court held that under the FELA the test was whether or not "...the negligence of the employer played any part, however small, in the injury or death which is the subject of the suit."

The Court in <u>Rogers</u> specifically rejected the general civil standard of causation.  That "the injury would not have occurred" but for "the negligence" thus the doctrine of "proximate cause" has no application in a suit under the FELA.  See <u>Rogers</u> supra.

F)    QUANTUM OF EVIDENCE NECESSARY TO
      MAKE OUT A PRIMA FACIE CASE

In addition, to indicating that even the slightest causal connection is enough for liability. The U.S. Supreme Court has made it apparent that little evidence is required to create a jury issue as to such connection.  <u>Stinson v. Atlantic Coast Line R. Co.</u>, 78 S.Ct. 136, 355 U.S. 652, 2 L.Ed 93.

> "Under the Federal Employers' Liability Act, the right of the jury to pass upon the question of fault and causality must be most liberally viewed.  The jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions.  <u>Chicago, Rock Island and Pacific Railroad Co. v. Melcher</u>, 8 Cir., 1964 333 F.2d 996, 999-1000."  <u>Boeing Company v. Shipman</u>, 411 F.2d 365, 371-372.

The United States Supreme Court has stated that the FELA,

> "...was enacted because Congress was dissatisfied with the common-law duty of the master to his servant.  The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the

employer's negligence.  The employer is stripped of his common-law defense and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is subject of the suit.  The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.

...The Congress when adopting the law was particularly concerned that the issues whether there was employer fault and whether that fault play any part in the injury or death of the employee should be decided by the jury whenever fair minded men could reach these conclusions on the evidence."  Rogers, supra p. 448-449.

The issue of negligence is one for juries to determine.  Wilkerson v. McCarthy Gas, 69 S.Ct. 413, 336 U.S. 53, 93 L.Ed 497 rehearing denied 69 S.Ct. 744, 336 U.S. 940 93 L.Ed 1098.

Only when there is a complete absence of probative facts to support a conclusion of negligence is the case to be taken away from the jury.  See Lavender v. Kurn, 66 S.Ct. 740, 327 U.S. 645.

In other words, "trial by jury is part of the remedy" in FELA cases.  Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 368 U.S. 355 36, 82 S.Ct. 780 784, 7 L.Ed 2d 798.

G)    NO ASSUMPTION OF RISK

Under FELA, assumption of risk is not available as a defense in whole or in part.  45 U.S.C.A. Section 53.  "The same law which brings plaintiff to this Court holds that plaintiff does not assume the risks of working for defendant railroad.  If defendant railroad permits or creates dangerous conditions of employment, plaintiff does not assume the risks of working under those dangerous conditions.  Thus, in this case, even if the plaintiff was aware that defendant was enforcing an unconstitutional regulation or assigning him to an unsafe work site without

furnished him with necessary and/or proper safety equipment, he did not assume the risk of the danger created by his working under those unsafe conditions." Williams v. Atlantic Coast Line R.R. Co., 190 F.2d 744 (5th Cir. 1951).

The fact that plaintiff was aware of these unsafe conditions yet continued to work under those conditions is an assumption of risk argument and not contributory negligence; and in no way would this effect the damages to which he would otherwise be entitled. 45 U.S.C.A. Section 53.

POINT II.    PLAINTIFF HAS PROPERLY PLEAD CAUSES OF ACTION FOR THE
             MTA'S VIOLATION OF THE FELA'S STATUTORILY IMPOSED DUTY

Contrary to that stated by defendant, plaintiff has properly plead both causes of action under the FELA.

With regard to the First Cause of Action:

a)    Plaintiff Has Properly Plead The Necessary Elements of A Cause of Action Under
      the FELA, Inclusive of Negligence Occurring Within the Scope of or Incidental to
      His Employment With the Defendant Railroad

Plaintiff's first cause of action properly pleads triable issue under the FELA for the acts of negligence of DANIEL BRUNO'S workplace superiors which caused him additional injury and/or aggravation of a prior injury, when under penalty of loss of pay or termination of employment, they arbitrarily enforced a "no work" status policy against DANIEL BRUNO which they knew had previously been declared unconstitutional, specifically because there were no clear cut guidelines for its implementation. All of the requisite elements for a cause of action under the FELA are present inclusive of defendant's status as a common carrier by rail engaged in interstate commerce, employment of plaintiff in furtherance of defendant's business in

interstate commerce by rail, defendant's negligence, causation of injury, and damages caused

thereby.

> b)    Because Daniel Bruno Sues for "New" Injuries Caused by Specific Railroad
>        Employees on a Different Date of Accident, Defendant's Affirmative Defenses of
>        Res Judicata, Accord and Satisfaction and the Prior Settlement Agreement Do
>        Not Act to Bar the First Cause of Action

This first cause of action stated by plaintiff's complaint herein does not plead injury

resultant from the September 22, 2003 falling pipe incident that was at the heart of the case that

was settled before Magistrate Judge Katz.  Rather DANIEL BRUNO herein seeks damages for

injuries resultant from the wholly separate matter of defendant's knowing enforcement of the

previously determined  facially unconstitutional Interim Order 99-06.  The settlement agreement

was very specific in its terms which limited that settlement to the injuries arising out of the

September 22, 2003 falling pipe incident.  The settlement agreement does not cover the "new"

additional and further injuries plaintiff sustained as a result of events occurring on and after

October 28, 2004 when DANIEL BRUNO first applied for "no work" status and his employer

knowingly enforced the facially unconstitutional Interim Order 99-06 to his detriment thereby

causing him further injury.

Therefore there can be no *res judicata* effect to the prior settlement, that would affect the

present cause of action.  Settlement agreements are to be strictly construed by reviewing courts.

See generally, <u>Manley v. Ambose Corp</u>, 337 F3d 237 (2nd Cir.  2003).  The prior settlement

agreement had between these two parties is therefore explicitly relegated by its very terms to

injuries occurring as a result of the September 22, 2003 falling pipe incident.[3]   and therefore can

---

[3] To this extent we note that contrary to that advocated by defendant, the sentence in the settlement
agreement giving DANIEL BRUNO the right to re-apply for "no work" status does not explicitly state that there
was any kind of release of the present cause of action for injuries occurring on and after October 28, 2004 when
the MTA continuously and arbitrarily denied him "no work" status.  Indeed, the settlement agreement's explicit
language speaks very specifically and exclusively about the September 22, 2003 incident without any reference
whatsoever to any prior "no work" status filings.  That sentence in the settlement agreement merely set forth a brief
post trial cooling off period of time before plaintiff could re-apply for "no work" status.  It did not prevent or
preclude the MTA from awarding DANIEL BRUNO "no work" status pursuant to his earlier application and it
clearly did not explicitly release the MTA from liability for arbitrarily refusing to do so on October 28, 2004 or any
time thereafter.

not constitute and accord and satisfaction for events occurring on and after October 28, 2004 when DANIEL BRUNO first applied for "no work" status and his employer knowingly enforced the facially unconstitutional Interim Order 99-06 to his detriment and further injury.[4]  Nor is DANIEL BRUNO complaining about his rights under that settlement agreement, but rather he complains of "new" injuries arising on and after October 28, 2004, a date neither mentioned nor contemplated by the earlier settlement agreement.  For these reasons, defendant's Rule 12(b)(6) motion should be denied as regards the first cause of action.

<u>With regard to the Second Cause of Action</u>:

     c)     Because FELA Adopts a "Discovery" Rule, Plaintiff's Second Cause of Action is not Barred by the FELA's Three Year Statute of Limitations

Plaintiff has timely brought his cause of action for personal injuries arising out of exposure to toxins in the days immediately following the 911 terror attacks on the World Trade Center.  The FELA provides that "[n]o action shall be maintained ... unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56.

The Second Circuit addressed the question of the FELA accrual point in <u>Mix v. Del. & Hudson Railway Co., Inc.</u>, 345 F.3d 82 (2d Cir.2003), and distinguished between so-called "traumatic" injuries and "gradual" injuries. <u>Mix</u>, 345 F.3d at 88. In <u>Mix</u>, the Circuit Court explicitly recognized the Supreme Court's adoption of the discovery rule in FELA cases:

> With respect to "gradual injuries"--those which occur gradually over long periods of time, due to ongoing exposure to harmful working conditions--the Supreme Court has adopted a discovery rule and held that the FELA statute of limitations accrues when the injury manifest[s] itself, taking into account whether the plaintiff should have known of his injury.... Thus, an FELA action accrues when the plaintiff in the exercise of reasonable diligence knows both the existence **and the cause** of his injury.

---

[4] The settlement agreement relating to the events of September 22, 2003, could not prospectively absolve defendant of its future negligent acts occurring after the very date exclusively defined therein, and especially that of October 28, 2004, as such agreements which exculpate one from their future acts of negligence are void as against public policy.

Id. at 86 (alteration in original) (internal quotation marks and citations omitted)(emphasis supplied).

At the trial had in the settled FELA cause of action relating to the September 22, 2003 falling pipe incident, plaintiff's treating neurologist, Kishore Ranade, MD, testified that DANIEL BRUNO'S neurological injuries and traumatic brain injury was caused by the falling pipe incident of September 22, 2003.  (See pages 18-20 of Dr. Ranade's trial testimony, Exhibit 3).  DANIEL BRUNO had no reason to suspect otherwise until he received the July 26, 2007 denial of his line of duty disability pension for the injuries caused by the September 22, 2003 falling pipe incident (Exhibit 2).  At that time, the MTA's medical board  presented the first medical evidence to DANIEL BRUNO which showed that his injuries were caused by 911 exposure.  The doctrine of Judicial Estoppel prevents the MTA from changing its opinion regarding the cause of DANIEL BRUNO's injuries.  More importantly, defendant can produce no medical evidence whatsoever showing that DANIEL BRUNO was given a medical opinion linking his hyponatremia, Cushings disease, cortisol resistance and/or SIADH to 911 exposure any time sooner than when so stated by the MTA Medical Boards July 26, 2007 denial of his line of duty pension.

Because DANIEL BRUNO does not learn of the cause of his hyponatremia, Cushings disease, cortisol resistance and/or SIADH until told by the MTA's medical board on July 26, 2007, this lawsuit brought under the aegis of the FELA is timely brought, pursuant to the "discovery" rule applicable to FELA actions.  Mix, Supra.

Nor does the settlement agreement had with regard to the September 22, 2003 falling pipe incident preclude this cause of action, as that settlement agreement must be strictly construed and its explicit terms limit it to those injuries caused on September 22, 2003.  On July 26, 2007 defendant's medical pension board defined a new causal link for the onset of plaintiff's

toxic exposure neurological injuries inclusive of his hyponatremia, Cushings disease, cortisol

resistance and/or SIADH, when they found that these injuries were caused by 911 exposure.

DANIEL BRUNO having only recently discovered this new causal nexus between his toxic

exposure injuries and his work assignment at "ground zero" may therefore properly and timely

bring suit under the aegis of the FELA.

In this regard we note specifically that this lawsuit was commenced on August 24, 2007,

well within 30 days of DANIEL BRUNO's learning of the causal nexus between his toxic

exposure neurological injuries and his work assignment at "ground zero".   Thus the cause of

action having accrued on or about July 26, 2007 when the MTA's medical pension boards

decision first set forth that causal nexus and that causal nexus was "discovered" by plaintiff, this

lawsuit commenced within three years of the accrual of the cause of action is timely and beyond

the limited scope of the settlement involving the falling pipe incident of September 22, 2003.


d)    Plaintiff Has Properly Plead The Necessary Elements of A Cause of Action Under
the FELA, Inclusive of Negligence Occurring Within the Scope of or Incidental to
His Employment With the Defendant Railroad

Plaintiff's second cause of action properly pleads triable issue under the FELA for the

acts of negligence of DANIEL BRUNO'S workplace superiors which caused him to be assigned

to work at or near "ground zero" without first properly inspecting the area, without first testing

the area for toxins and without first providing appropriate safety equipment.  All of the requisite

elements for a cause of action under the FELA are present inclusive of defendant's status as a

common carrier by rail engaged in interstate commerce, employment of plaintiff in furtherance

of defendant's business in interstate commerce by rail, defendant's negligent assignment of

plaintiff to the work site, causation of injury, and damages caused thereby.  Therefore plaintiff

has properly plead this FELA cause of action.

e)    DANIEL Bruno's Injuries Were Incidental to His Employment in Interstate Commerce by Rail Inasmuch as it Was His Railroad Employer Who Asdsigned Him to Work at or near the Vicinity of  "Ground Zero".

At paragraph 16 of his complaint, DANIEL BRUNO alleges that on Speptember 13, 2001

he was assigned by the defendant MTA to work at or near the vicinity of the World Trade

Center, New York, NY in the immediate aftermath of the September 11, 2001 terror attacks.

Because the complaint alleges that DANIEL BRUNO's employer, a railroad engaged in

interstate commerce, assigned him to work at this location, the job he performed thereat was in

furtherance of his employers business. [See e.g.: Greene, Supra, 280 F3d at 239 (Because the

FELA is to be liberally construed so as to achieve its underlying remedial purpose, a police

officer's assignment to the MTA Police Department's Auto Crime Unit was held to be in

furtherance of the railroad's business within the meaning of the FELA.)]  Because these elements

appear in plaintiff's complaint, he has properly plead this cause of action under the aegis of the

FELA. Therefore the second cause of action cannot be dismissed on a Rule 12(b)(6) motion.


f)    The FELA is DANIEL BRUNO's Exclusive Remedy as Against His Employer for the Personal Injuries He Sustained as a Result of Negligently Being Assigned By His Employer to Work at or near the Vicinity of the September 11, 2001 Terror Attacks Perpetrated Upon the World Trade Center and Therefore Is Not Preempted by ATSSA

Defendant erroneously cites the case of World Trade Center Disaster Site Litigation, 414

F3d 352 (2nd Cir.  2005) for the proposition that the Air Transportation Safety and Stabilization

Act of 2001 (hereinafter "ATSSA"), 49 USC § 40101, preempts and precludes plaintiff's second

cause of action.  Nothing however within the Second Circuit's WTC opinion, however, states

any such preemption.  Rather, in WTC the Second Circuit found that ATSSA preempts **State** law

claims.  But, the Court of Appeals did not say that ATSSA preempts other Federal laws, no less

the FELA.

The Federal Courts are clear, the FELA is the injured railroad employee's exclusive remedy as against his employer for the personal injuries he sustained in the course and scope of his employment with the railroad.  Tufariello v. Long Island R.R. Co., 364 F.Supp.2d 252 (EDNY  2005) citing Rivera v. Union Pacific Railroad Co., 378 F.3d 502, 507 (5th Cir. 2004). Although other Federal Laws may overlap the exclusive remedy provided by FELA, they have been interpreted by the Federal Courts to be co-extensive with FELA and thereby do not preempt FELA. [See e.g.:  Atchison, Topeka & Santa Fe Railway Co. v. Buell, 480 U.S. 557, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987)("Although the [Railway Labor Act, 45 USC § 151, et seq.] minor disputes remedy is exclusive in at least some circumstances, it is not exclusive in situations that the FELA was enacted to address." ... "the fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring an FELA action for damages.");  Masiello v. Metro-North Commuter R.R., 748 F.Supp. 199 (SDNY  1990)(Title VII does not preempt FELA Claim); Higgins v. Metro-North Commuter Railroad, 143 FSupp2d 353 (SDNY 2003)(Title VII does not preempt FELA for emotional distress injuries resultant from sexual misconduct.); Tufariello; Supra (Compliance with OSHA regulations does not preempt FELA cause of action for the railroad employer's negligence.); and, Coppinger v. Metro-North Commuter R.R., 861 F.2d 33 (2d Cir.1988) (Section 1983 claim not preempted by the Railway Labor Act)].  Therefore, absent an explicit congressional mandate, ATSSA cannot preempt this FELA lawsuit.

CONCLUSION

DANIEL BRUNO has properly plead both causes of action stated by this Complaint

under the aegis of the FELA.  Dismissal pursuant to FRCP Rule 12(b)(6) is not warranted.

Moreover, because settlement agreements are to be strictly construed the prior settlement

of the cause of action which arose on September 22, 2003 has no bearing at all upon the

plaintiff's first cause of action, which relates to both a different date of occurrence, a different

factual occurrence and different injuries (i.e.: "new" injuries inclusive of the aggravation,

activation and/or exacerbation of pre-existing injuries.)  The prior settlement which was

restricted by its explict terms to the events regarding the falling pipe incident of September 22,

2003 are neither a *res judicata* nor an accord and satisfaction with regard to the "new" injuries

suffered by DANIEL BRUNO in consequence of the MTA's denial of his October 28, 2004's

"no work" status request.  Nor does that prior settlement relate to or preclude a FELA cause of

action for the injuries DANIEL BRUNO sustained when assigned by the MTA to work in the

aftermath and at the situs of the September 11, 2001 terror attacks upon the World Trade Center

as set forth by the second cause of action.  The prior settlement agreement simply does not apply

to this toxic exposure which occurred prior to the September 22, 2003 date of injury explicitly

and exclusively mentioned therein.

Furthermore, because his toxic exposure injuries did not immediately manifest

themselves and he did not "discover" the medical causal nexus between his hyponatremia,

Cushings disease, cortisol resistance and/or SIADH and his work assignment at "ground zero" in

the immediate aftermath of the September 11, 2001 terror attacks until so explicitly stated on

July 26, 2007 by the MTA's medical board when denying his application for a line of duty

disability pension for injuries sustained as a result of the falling pipe incident of September 22,

2003, DANIEL BRUNO has timely commenced this FELA lawsuit within the meaning of the

cases defining "accrual" of the applicable three year statute of limitations.

Nor does ATSSA preempt DANIEL BRUNO's exclusive right to recovery against his railroad employer for their negligence with caused him injury as embodied and preserved by the FELA, a Federal statute that is to be liberally interpreted so as to achieve its underlying remedial purpose.

For all these reasons, defendant's motion for judgment on the pleadings brought pursuant to FRCP Rule 12(b)(6) should be denied in all respects.

Dated: Rockville Centre, New York
      December 17, 2007

*Philip J. Dinhofer*

By: Philip J. Dinhofer, #6940
**PHILIP J. DINHOFER, LLC**
Attorneys for Plaintiff(s)
77 N. Centre Ave. - Suite 311
Rockville Centre, NY 11570
516-678-3500