UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                   :
DANIEL BRUNO,                      :
                                   :
                  Plaintiff,       :
                                   :
       -against-                   :       07 CIV 7503 (VM)
                                   :
                                   :
METROPOLITAN TRANSPORTATION        :
AUTHORITY,                         :
                                   :
                  Defendant.       :
----------------------------------X


**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**


                    Hoguet Newman Regal & Kenney, LLP

                    10 East 40th Street
                    New York, New York  10016
                    (212) 689-8808

                    *Attorneys for Defendant*


Of Counsel:

Ira J. Lipton, Esq.
Juan Skirrow, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................ii

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT...............................................................................................................1

    I.        PLAINTIFF'S FIRST CAUSE OF ACTION
              MUST BE DISMISSED ..........................................................................1

              A.      Plaintiff's "Injury" is not Actionable Under FELA ....................1

              B.      Plaintiff Previously Settled and Released this Claim .................5

    II.       THE SECOND CAUSE OF ACTION MUST BE DISMISSED ............6

              A.      Plaintiff's Claim for Injuries Allegedly
                      Arising from 9/11 Have Been Released......................................7

              B.      THE APPLICABLE THREE YEAR STATUTE
                      OF LIMITATIONS BARS THE CLAIM....................................9

CONCLUSION.........................................................................................................10

# TABLE OF AUTHORITIES

## CASES

Atchison, Topeka and Santa Fe Railway Co. v. Buell, 480 U.S. 557 (1987) ..................... 2

Bealer v. Missouri Pacific R. Co., 951 F.2d 38 (5th Cir. 1991) ......................... 9

Capasso v. Metropolitan Transport Authority, 198 F. Supp. 2d 452
    (S.D.N.Y. 2002) ........................................................................ 1, 2, 3, 5

Cohen v. Metropolitan-North Commuter Railroad Co., No. 89 Civ. 7498, 1991
    WL 4699 (S.D.N.Y. Jan. 11, 1991) ................................... 3

Colombo v. O'Connell, 310 F.3d 115 (2d Cir. 2002) ......................... 3

Consolidated Rail Corporation v. Gottshall, 512 U.S. 532 (1994) ................................. 3, 4

Gadsden Port Authority Tans-Hudson Corporation ,140, F.3d 207 (2d Cir., 1998) ........... 2

Higgins v. Metropolitan-North Railroad Co., 143 F. Supp. 2d 353 (S.D.N.Y.
    2001) ................................................................................. 4

Matson v. Burlington Northern Santa Fe R.R., 240 F.3d 1233 (10th Cir. 2001) ............... 9

Metropolitan- North Commuter Railroad Co. v. Buckley, 521 U.S. 424 (1997) ............... 3

Mix v. Delaware Hudson Railway Co., 345 F.3d 82 (2d Cir. 2003) ................................. 9

Nelson v. Metropolitan-North Commuter Railroad Co., 235 F.3d 101
    (2d Cir. 2000) ................................................................... 3, 4

Uzdavines v. Weeks Marine, Inc., 418 F.3d 138 (2d Cir. 2005) ......................... 7

Wright v. Ernst & Young LLP, 152 F.3d 169 (2d Cir. 1998) ............................. 1

## STATUTES

42 U.S.C. §1983 ....................................................................... 3

## PRELIMINARY STATEMENT

With respect to Plaintiff Daniel Bruno's first cause of action concerning the allegedly unlawful enforcement of Defendant Metropolitan Transportation Authority's ("MTA's") Sick Leave Rules, Plaintiff completely fails to identify facts that could establish that he sustained any injury cognizable under the Federal Employers Liability Act ("FELA"). Moreover, both of Plaintiff's causes of action were released by Plaintiff when he settled his prior lawsuit against the MTA involving the same injuries. Finally, even with the application of the "discovery rule," Plaintiff's second cause of action for injuries allegedly arising from 9/11 is sill time-barred. [1]

## ARGUMENT

I.    **PLAINTIFF'S FIRST CAUSE OF ACTION MUST BE DISMISSED**

A.    **Plaintiff's "Injury" is not Actionable Under FELA**

In his Opposition Brief, Plaintiff asserts that, from October 28, 2004 until the date of his retirement on August 29, 2007, he was on sick leave and was thereby subject to the MTA's rules governing sick and disability leave. These rules, Bruno asserts, limited his freedom which, in turn, somehow caused him to sustain an injury. (Opp. Br. at 4-5, 15).

As the Court noted in <u>Capasso v. Metropolitan Transp. Auth.</u>, 198 F. Supp. 2d 452, 456, 460 (S.D.N.Y. 2002), the MTA's sick leave policy for police officers is "unusually generous," and provides for full salary, including raises, from the date of the

---

[1] Preliminarily, we note that, in an effort to remedy the deficiency in his pleading, Plaintiff impermissibly presents additional allegations via his Memorandum of Law in Opposition to Defendant's Motion to Dismiss. ("Opp. Br."). Specifically, Plaintiff seeks to save his case by asserting in his brief facts relating to the injury he allegedly sustained while on sick leave (his first cause of action), and facts purporting to explain his injury allegedly suffered as a result of 9/11 (his second cause of action) (<u>See, e.g.</u>, Opp. Br. at 5-7). Plaintiff may not plead facts in his brief in this manner. <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998) ("a party is not entitled to amend its complaint through statements made in motion papers") (citations omitted). In any case, as discussed herein, even with these additional facts asserted in his brief, Plaintiff's allegations are still deficient and cannot support his FELA claims as a matter of law.

injury. The rules governing sick leave provide that the injured member of the Police Department, while on sick leave, must be available for investigation either in person or by phone. <u>See</u> MTA Police Department Interim Order 99-06 (hereafter, "Sick Leave Rules") at ¶5(a).[2] The Sick Leave Rules specifically provide that members may leave their "sick location" in non-emergency situations provided they obtain permission. Further, members suffering from certain conditions or prolonged illnesses may apply for so-called "no work" status, which would free said members from the strictures of the Sick Leave Rules. <u>See</u> Sick Leave Rules at ¶¶5(b), (c) and (g). These rules rationally serve the MTA's legitimate interest in minimizing malingering and preventing sick leave abuse. <u>Capasso</u>, 198 F. Supp. 2d at 460. Plaintiff's FELA claim in connection with the Sick Leave Rules appears to be twofold: (i) he claims that the Sick Leave Rules were found to be unconstitutional by the Court in <u>Capasso</u>; and (ii) Plaintiff complains that he was denied "no work status" and as a consequence, according to Plaintiff's treating neurologist, he was not able to pursue needed "cognitive therapy." (Opp. Br. at 5, n. 2).[3]

Plaintiff has failed to identify a FELA injury. First, the duty imposed on railroads under FELA is the duty to provide employees with a safe place to work. <u>Atchison, Topeka and Santa Fe Railway Co. v. Buell</u>, 480 U.S. 557, 558 (1987) (railroad has duty to furnish employees "with a safe place to work"); <u>Gadsden Port Authority Trans-Hudson Corporation</u>, 140 F.3d 207, 209 (2d Cir. 1998) (railroad liable under FELA for failing to provide "a safe workplace"). Yet the "injury" described by Bruno has nothing to do with

---

[2] The Sick Leave Rules are annexed to the Barraga Declaration as Exhibit 3.

[3] According to the brief, Bruno's treating neurologist, Dr. Ranade, told Bruno's attorney that he (Bruno) was wrongfully denied "no work" status and was thereby kept under "house arrest." This, in turn, resulted in Bruno's allegedly being unable to pursue an appropriate course of cognitive therapy, which exacerbated his pre-existing condition. Not only is this allegation presented in a completely improper form, there is no basis whatsoever for Dr. Ranade's assumption, conveyed through counsel, that the Sick Leave Rules prevent a sick or disabled police officer from obtaining needed medical or psychological treatment.

the MTA's provision of a safe place to work.  Indeed, Plaintiff complains of being

subjected to an unconstitutional personnel rule, not an unsafe workplace.  The rules he

complains of provide that he obtain permission to leave his home, absent an emergency,

and that he otherwise remain at home, which is not the railroad workplace.  To the extent

that Plaintiff has a viable claim for the violation of his constitutional rights (which he

certainly does not), the appropriate vehicle for such a claim is 42 U.S.C. §1983, not

FELA.[4] Claims brought by railroad employees that do not involve the safety of the work

place, while perhaps actionable under some other theory, are not actionable under FELA.

See, e.g., Nelson v. Metro-North Commuter Railroad Co., 235 F.3d 101 (2d Cir. 2000)

(sex harassment claim not actionable under FELA absent physical impact or immediate

risk of physical harm); Cohen v. Metro-North Commuter Railroad Co., No. 89 Civ. 7498,

1991 WL 4699 (S.D.N.Y. Jan. 11, 1991) (complaint by employee that he was damaged as

a result of being falsely charged and disciplined for workplace violations not actionable

under FELA).[5]

Second, FELA is concerned with the "physical dangers of railroading."

Consolidated Rail Corporation v. Gottshall, 512 U.S. 532, 542 (1994); see also Metro-

---

[4] Contrary to Plaintiff's assumption, Capasso did not hold that the Sick Leave Rules (Interim Order 99-06) were facially unconstitutional.  Instead, the Court denied defendant Metro-North's motion for summary judgment on plaintiff's claim that the regulation requiring permission to temporarily leave the "reported sick location" was unconstitutional due to an absence of guidelines. The court expressly declined to address plaintiff's argument that the Interim Order was "facially unconstitutional with respect to the method by which a police officer is granted no work status." Capasso, 198 F. Supp. 2d at 461, n. 3. In any case, Plaintiff has failed to plead a constitutional violation here.  He has failed to allege that he was ever denied permission to leave his home to tend to personal needs, whether medical or otherwise.  To maintain an action for damages for a constitutional violation, Plaintiff must establish that MTA's sick leave policy was not just unconstitutional on its face, but that he was personally damaged by its application to him.  See Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002) (to bring damages claim under 42 U.S.S. §1983, plaintiff must allege facts indicating that some official action has caused the plaintiff to suffer an actual injury).

[5] Capasso, incidentally, considered plaintiff's challenge to the Sick Leave Rules under the Fair Labor Standards Act ("FLSA") and 42 U.S.C. §1983, not FELA.  The Court declined to address plaintiff's FELA claim.

North Commuter Railroad Co. v. Buckley, 521 U.S. 424, 431 (1997) (quoting Gottshall, 512 U.S. at 555) (FELA's focus is on "physical perils"); Nelson, 235 F.3d at 110 (FELA's central focus [is] on *physical* perils) (emphasis in original). In Gottshall, the Supreme Court adopted the "zone of danger" test for FELA claims, i.e., absent either a physical impact, or exposure to an imminent threat of physical harm, an employee's injury claim will not lie under FELA. Thus, the Court held that an employee who claimed to have suffered from depression, headaches and a nervous breakdown as a result of being forced to work exceedingly long hours under unsafe conditions, could not sue under FELA. Gottshall, 512 U.S. at 547, 555; see also, Nelson 235 F.3d 101 (sex harassment claim not actionable under FELA absent physical impact or immediate risk of physical harm; emotional damages as a result of claimed harassment by co-worker at workplace insufficient basis for FELA claim); Higgins v. Metro-North Railroad Co., 143 F. Supp. 2d 353, 358 (S.D.N.Y. 2001) (same). Here, Plaintiff only alleges (in his Opposition Brief) that he was impeded in gaining access to cognitive therapy as a consequence of the enforcement of an administrative rule, which in turn, "aggravated pre-existing cognitive impairments." (Opp. Br. at 5) There is no allegation that he was within a "zone of danger"; i.e., he alleges neither a physical impact nor exposure to an imminent risk of physical harm. Accordingly, he has failed to plead an injury cognizable under FELA.

Finally, as Defendant argued in its Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def's Br. "), FELA requires that the injury occur while the employee was acting within the scope of, or incidental to, his employment in interstate commerce. (Def's Br. at 10). Injuries incurred that are not connected with the

railroad's work, (e.g., injuries occurring while engaged in private activity such as commuting) are not actionable under FELA. (Def's Br. at 10-12.) Plaintiff responds that, by virtue of the enforcement of Defendant's Sick Leave Rules, he was subject to "house arrest" in violation of his constitutional rights. (Opp. Br. at 5). But this is a *non sequitur*. He fails to identify how his injury occurred while actually engaged in railroad work. He fails to distinguish the cases cited in Defendant's brief; and he offers no authority for the absurd proposition that he may sue under FELA for sustaining an injury that allegedly occurred not while he was working, but while he was at home unable to perform railroad work. Indeed, the lone case on which Plaintiff relies, <u>Capasso</u>, <u>supra</u>, held that a member of the MTA Police Department on sick leave and subject to Interim Order 99-06 is *not* engaged in the performance of duty. <u>Capasso</u>, 198 F. Supp. 2d at 460-61. While this holding was a predicate to finding that the employee was not entitled under the FLSA to overtime pay while out on sick leave, its rationale equally supports the assertion here that when an MTA employee is out on sick leave, he is not engaged in the work of the railroad and, accordingly, injuries occurring while on sick leave cannot be actionable under FELA.

**B.    <u>Plaintiff Previously Settled and Released this Claim</u>**

As Defendant points out in it main brief (Def's Br. at 13-15 ), Plaintiff raised the issue of his being accorded "no work" status in connection with his 2004 FELA suit for injuries occurring on September 22, 2003. This is manifest in the settlement agreement dated February 1, 2006 ("Settlement Agreement'), which specifically provides that Plaintiff may <u>reapply</u> for "no work status," and further imposes upon the MTA the duty to consider such reapplication in good faith.

Plaintiff argues that the Settlement Agreement (under which MTA agreed to pay over $300,000 in benefits to Plaintiff) does not preclude the instant claim for damages in connection with being denied "no work status" since the Settlement Agreement concerns the September 22, 2003 falling pipe incident and not "new" or subsequent injuries. The "new" injury, according to Plaintiff occurred when Defendant allegedly denied him no work status on October 28, 2004. (Opp. Br. at 16). But the Settlement Agreement was entered into on February 1, 2006, nearly 2 ½ years later, and, by stating therein that Bruno may "reapply," explicitly references the prior denial of "no work status" that he now wishes to sue over. By entering into the Settlement Agreement, Plaintiff agreed that his rights in connection with "no work status" would be defined according to the terms of that agreement. And by pressing his claimed right to "no work status" in his suit over the pipe incident, wherein he alleged that he was rendered disabled from work, Plaintiff inextricably made his sick leave right rights part and parcel of his September 22, 2003 pipe incident litigation. When he settled the pipe incident suit in February 2006, Plaintiff reserved no right to seek redress for any prior denial of "no work status"; he also discontinued his litigation with prejudice; and he signed a General Release which, among other things (see Point II, below), waived all claims in connection with the September 22, 2003 pipe incident.[6]

## II.    THE SECOND CAUSE OF ACTION MUST BE DISMISSED

While acknowledging that he previously sued the MTA under FELA for neurological injuries, including hyponatremia, Cushings Disease, cortisol resistance

---

[6] As Defendant argued in its main brief (Def's Br. at 15-16), to the extent that Plaintiff complains that he was denied his rights under the 2006 Settlement Agreement (he makes no such claim), he is limited to an action for breach of contract. Plaintiff did not respond to Defendant's argument.

and/or SIADH (Opp. Br. at 7, 18), and ultimately settled that claim with the MTA for over $300,000, Plaintiff assumes that he can sue again for these same illnesses since he alleges that he recently discovered that they were caused not by the September 22, 2003 pipe incident, but by being exposed to the air at ground zero on September 13, 2001. (Opp. Br. at 18-19). Plaintiff is mistaken. His claim for these illnesses is subject to the terms of a General Release he signed;[7] and his claim is otherwise time-barred.[8]

### A.    Plaintiff's Claim for Injuries Allegedly Arising from 9/11 Have Been Released

Plaintiff maintains that the Settlement Agreement is "limited to those injuries caused on September 22, 2003 (Opp. Br. at 18) and that that he is therefore not, by the terms of the Settlement Agreement, precluded from suing for "toxic exposure" occurring prior to September 22, 2003.  (Opp. Br. at 22).  The settlement documents provide otherwise.  Plaintiff apparently refers to ¶7 of the Settlement Agreement, which provides that Plaintiff would execute a "General Release."  The reference there to the incident of September 22, 2003 relates not to a limitation on the scope of the release but to an indemnity provision which Plaintiff agreed to execute, whereby he agreed to hold harmless and defend the MTA and its law firm against any third party claims "related to the incident of September 22, 2003 or other claims advanced in the litigation."  The actual release, on the other hand, is a "General Release" and its language is far broader

---

[7] A copy of the General Release in included within Exhibit 2 to the affidavit of Elaine Barraga, Esq.

[8] Plaintiff incorrectly asserts that the doctrine of judicial estoppel bars Defendant from denying that Bruno's injuries arise out of 9/11 exposure.  Defendant never asserted that Plaintiff's injuries stem from 9/11. (See note 9, below.) But even assuming it had, a statement in such a document would not qualify for judicial estoppel treatment.  See Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 147 (2d Cir. 2005) (judicial estoppel provides that, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (emphasis added) (citations omitted).

than Plaintiff represents.  To be sure, Plaintiff expressly released the MTA for injuries "related in any way to the incident of September 22, 2003," including claims for "[a]ll physical and psychological injuries, including, inter alia, headaches, dizziness, blurred vision, loss of consciousness, memory loss, traumatic brain injury, hyponatremia, low blood sugar, SIADH, seizures, cognitive impairment, Cushing's Syndrome and/or Disease, cachexia, concussion, and post-concussion syndrome; [and] anxiety."  But the MTA was also released for such injuries:

> arising out of or which may arise out of any working condition, of any kind, during my employment at any time by RELEASEES, including, but not limited to, any conditions which existed on or about September 22, 2003, exposure to or any working condition or environment created by the existence of any material, substance, product, good(s), or working conditions(s) generally and as set forth in the Complaint and other pleadings filed in the lawsuit entitled "Daniel Bruno v. Metropolitan Transportation Authority" in the United States District Court, Index Number 04 Civ. 3383 (THK), or as otherwise may have occurred.

(See General Release, Ex. 2 to Barraga Decl.)  This extremely broad language clearly releases the MTA not just from injuries relating to the September 22, 2003 pipe incident, but from any working conditions to which Bruno was exposed at any time.  Thus, Plaintiff's injuries allegedly sustained from working at or near the vicinity of the World Trade Center on or about September 13, 2001, including the injuries he now specifies in his opposition papers (Opp. Br. at 7), i.e., hyponatremia, Cushings disease, cortisol resistance and/or SIADH (injuries he previously sought and received compensation for and hence, were expressly identified in the General Release), are subject to the February 1, 2006 General Release. [9]

---

[9] Plaintiff's contention that the MTA Medical Board attributes these illnesses to 9/11 is a gross distortion of its July 25, 2007 communication, attached to Plaintiff's opposition papers.  (See Exh. 2 annexed to the Declaration of Philip J. Dinhofer).  In that letter, the Board denied Bruno an accidental disability pension (Bruno is now retired on a regular disability pension) on the grounds that his disabling conditions pre-

### B. The Applicable Three-Year Statute of Limitations Bars the Claim

Plaintiff's September 11 claim is also barred by the three-year statute of limitations applicable to FELA claims, which claims accrue once "plaintiff, in the exercise of reasonable diligence knows both the existence and cause of his injury." Mix v. Delaware Hudson Railway Co., 345 F.3d 82, 86 (2d Cir. 2003).   Plaintiff proceeds on the false assumption that, since he allegedly learned that his maladies were allegedly caused by 9/11 (and not the September 2003 pipe incident) on July 26, 2007, that his time to sue was tolled until the latter date. But:

> [K]nowledge of the specific cause of a work-related injury is not required to trigger the statute of limitations in a FELA action. Rather, a FELA claim accrues when plaintiff knows or should know that his injury is merely work-related.

Matson v. Burlington Northern Santa Fe R.R., 240 F.3d 1233, 1236 (10th Cir. 2001) (citing Bealer v. Missouri Pacific R. Co., 951 F.2d 38, 39 (5th Cir. 1991); see also, Mix, 345 F.3d at 87 (absence of actual medical diagnosis does not relieve FELA plaintiff of duty of commencing litigation when he is aware of injury stemming from work).

Bruno believed that his injuries were work-related more than three years prior to the institution of this lawsuit, which was filed on August 24, 2007.  In his complaint dated April 27, 2004, Bruno sued Defendant under FELA for "severe and disabling injuries" which, as Plaintiff fully acknowledges in his opposition papers, included the very illnesses that he is now suing for.  (Opp Br. at 18-19).  Thus, the two prerequisites for triggering FELA's three-year limitation period – knowledge of the existence of the

---

existed the September 22, 2003 job-related accident.  The Board noted an October 26, 2004 emergency room record which recorded, presumably based on Bruno's own statements, that he was exposed to 9/11. (Ex 2 at p. 5).  The Board concluded only that "the record raises a possibility of exposure at 9/11 to be a factor."  Exh. 2 at 6.  The Board also noted that many of the conditions Bruno complains of pre-date 9/11 and may stem from head injuries sustained in car accidents in 1998 and 2000.

injuries and knowledge that said injuries were work-related – were present at least as far back as April 27, 2004. Accordingly, Plaintiff's new FELA claim (to recover for the same injuries he already sued for and obtained a settlement) is barred by FELA's three-year statute of limitations.

## CONCLUSION

By reason of the foregoing, it is respectfully requested that Plaintiff's Complaint against the MTA be dismissed in its entirety, with prejudice, and that this Court grant such other and further relief as it may deem just and proper and equitable.

Dated: New York, New York
      January 25, 2008

Respectfully submitted,

HOGUET NEWMAN REGAL & KENNEY, LLP

By: _____

Ira J. Lipton
Juan A. Skirrow
HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, New York 10016
Telephone: (212) 689-8808
Facsimile: (212) 689-5101

*Attorneys for Defendant Metropolitan Transportation Authority*